## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MICHAEL A. WILLIAMS,            **:**

      Petitioner,            **:**

  vs.                        **:**

MICHAEL SHEETS, Warden,    **:**
Ross Correctional Institution,

                          **:**

      Respondent.

                          **:**

Case No. 3:07cv00394

District Judge Walter Herbert Rice
Magistrate Judge Sharon L. Ovington

## REPORT AND RECOMMENDATIONS[1]

### I.   <u>Introduction</u>

In January 2002 Petitioner Michael A. Williams and another man were involved in a shooting and a car chase that resulted in the death of Anthony Prego. Williams was charged in a six-count indictment with murder, attempted murder, and various firearm charges.  Following trial in the Montgomery County, Ohio Court of Common Pleas a jury found Williams guilty of all charges including most notably murder and attempted murder.  He was sentenced, in part, to fifteen years to life on his murder conviction to be served consecutive to a nine-year sentence on his attempted murder conviction.  (Doc. #5, Exhibit 18).

Having unsuccessfully challenged his convictions in the Ohio courts, Williams

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

brings the present case *pro se* seeking a writ of habeas corpus under 28 U.S.C. §2254.

The case is before the Court on Williams' Petition (Doc. #1), Respondent's Answer (Doc.

#5), Williams' Memorandum in Support of Traverse (Doc. #7), and the record as a whole.

## II.   <u>Factual Background</u>

The Ohio Court of Appeals described the background of Williams' convictions as

follows:

> At about 4:00 one morning in January, 2002, Brian and Anthony Prego, brothers, were waiting in a car for a friend.  Williams drove alongside in a Ford Taurus, accompanied by Kenneth Howell, in the passenger seat. Someone in the Taurus – Howell, Williams, or both – opened fire on the Prego brothers.  Brian Prego ducked, pushed the gas pedal, and took off, with the Taurus in pursuit.  Both Brian Prego and an eyewitness who was not in either car saw the passenger in the Taurus perched in the window shooting ahead into the car occupied by the Prego brothers.  Attempting to lose the Taurus, which was gaining on him, Brian Prego went over some railroad tracks, lost control, and hit a fence-post.  Brian Prego called 911.

> Police arriving at the scene found Anthony Prego slumped in the front seat of the car the Pregos were in, dead of a gunshot wound to the head.  A few hundred feet away, Williams and Howell were walking away from the Taurus, which had flipped and crashed into a pole.

> In response to police questioning, Williams made the following statements: (1) he had been out the night before with Howell; (2) he was driving the Taurus; (3) he was armed with a 40-caliber Glock; (4) he shot at some people in a car maybe fifteen times; and (5) he didn't think Howell had a gun that night.

> At trial, the State presented forensic evidence tending to establish that there were two guns, a Glock 40-caliber gun recovered at the scene, and a different gun, which was not recovered, that fired 9-millimeter ammunition. Spent casings from a 9-millimeter gun were found in the back seat of the Taurus, and Williams discarded a 9-millimeter magazine when police arrived at the scene.

Williams and Howell were tried separately.  At his trial, Williams admitted to driving the Taurus, but claimed that it was Howell who had done all of the shooting.  He testified that he only chased the car with the Prego brothers because Howell threatened to kill him if he didn't.  Paula Harris corroborated Williams on this point at trial, claiming to have been on the floor of the back seat in the Taurus when the shooting started.  In rebuttal, a police officer who had interviewed Harris testified that she had denied having been in the car, claiming that she had not seen Williams or Howell that night.  There was also testimony tending to show that the front seats in the Taurus were fully extended and reclined, leaving insufficient room in the back seat for a third occupant of the car.

(Doc. #5, Exh. 21).

## III.  **Williams' State-Court Proceedings**

Williams' post-conviction litigation in the Ohio courts occurred in three phases.

**Phase One:**  Williams, through counsel, filed a timely direct appeal in the Ohio Court of

Appeals raising three assignments of error:

1.    The trial court erred in overruling the Appellant's Batson[2] challenge based upon the prosecutor's use of peremptory jury strikes to eliminate minority jurors from the jury panel.

2.    The trial court erred in failing to grant the Appellant's Motion to Dismiss based upon the prosecution's destruction of exculpatory evidence.

3.    The trial court erred in failing to grant the Appellant's Motion for Judgment of Acquittal based upon insufficient evidence to convict.

(Doc. #5, Exh. 19)(footnote added).  The Ohio Court of Appeals found no merit in these

claims and affirmed Williams' convictions on June 24, 2005.  (Doc. #5, Exh. 21).

Williams did not pursue a timely direct appeal in the Ohio Supreme Court.

---

[2] *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Instead, he waited eleventh months, until late May 2006, to file a Motion for Delayed

Appeal.  (Doc. #5, Exh. 34).  He raised three Propositions of Law:

1.   A prosecutor is constitutionally prohibited from using peremptory strikes
     for the sole purpose of eliminating prospective minority jurors.

2.   A defendant is prejudiced when the State willfully destroys exculpatory
     evidence which is necessary for his defense.

3.   It is constitutionally impermissible for a court to sustain a conviction based
     upon insufficient evidence.

*Id*.  On August 2, 2006, the Ohio Supreme Court denied Williams' Motion for Delayed

Appeal.  (Doc. #5, Exh. 35).

**Phase Two:**  On September 19, 2005, Williams returned to the Ohio Court of Appeals by

filing an Application for Reopening Pursuant to Rule 26(B) of the Ohio Rules of

Appellate Procedure.  (Doc. #5, Exh. 22).  He argued that his appellate counsel provided

constitutionally ineffective assistance by failing to raise the following claims on direct

appeal:

1.   Trial counsel was ineffective where he failed to request the Court to
     determine Appellant's weapons under a disability charges after the trial,
     thus limiting the prejudicial effect evidence and testimony related to that
     issue.

2.   The trial court erred when it erroneously sentenced the Appellant to
     multiple firearm specifications where ORC [Ohio Revised Code]
     §2941.14.5 specifically forbids such a sentence.

3.   The trial court failed to make the requisite findings for the imposition of
     consecutive terms of incarceration under ORC §2929.14(E)(4) &
     §2929.19(B)(2)(c).

(Doc. #5, Exh. 22).

On December 21, 2005, the Ohio Court of Appeals issued a decision finding no merit in Williams' contentions and denying his Application to Reopen Appeal.  (Doc. #5, Exh. 24).  Williams did not file a timely appeal of this Decision in the Ohio Supreme Court.

**Phase Three:**

On May 12, 2006, Williams filed a *pro se* Motion for Delayed Reconsideration asking the Ohio Court of Appeals to reconsider its prior (December 21, 2005) Decision in light of the then-recent Ohio Supreme Court decision in *State of Ohio v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006).  (Doc. #5, Exh. 25).  The Ohio Court of Appeals denied Williams' Motion for Delayed Reconsideration on June 28, 2006.  In doing so, the Ohio Court of Appeals reasoned:

> The test generally applied in deciding a motion for reconsideration ... is whether the motion calls to the attention of the court an obvious error in its decision, or raises an issue for consideration that was either not considered at all, or was not fully considered, by the appellate court when it should have been....  We rendered judgment herein on June 24, 2005.  *State v. Foster* ... was not decided until 2006.  Therefore, we did not commit an obvious error, since *State v. Foster* ... had not been decided when we rendered our decision.  Similarly, there is no reason why we should have considered the sentencing issue decided in *State v. Foster* ... when we rendered out judgment in June, 2005, because not only had *State v. Foster* ... not yet been decided, Williams did not raise the sentencing issue in his appeal.

(Doc. #5, Exh. 27(internal citation omitted)).

Williams filed a timely *pro se* Memorandum in Support of Jurisdiction in the Ohio

5

Supreme Court raising one Proposition of Law:

> Where a sentencing statute has been determined to be unconstitutional
> under the Sixth Amendment to the United States Constitution's jury trial
> protections, a Defendant sentenced under the offending statute should be
> provided with a corrective process to challenge the violation.

(Doc. #5, Exh. 28).  On August 1, 2006, Williams filed another Memorandum in Support

of Jurisdiction raising the same Proposition of Law.  (Doc. #5, Exh. 30).

On October 18, 2006, the Ohio Supreme Court filed two Entries denying Williams

leave to appeal.  (Doc. #5, Exhs. 32, 33).


IV.    **The Present Case**

Williams filed his Petition for Writ of Habeas Corpus on October 16, 2007 raising

the following five grounds for relief:

**Ground One:** Petitioner was denied due process and equal protection and his Sixth
Amendment right to a fair trial when the trial court overruled Petitioner's *Batson*
challenge.

> Supporting Facts: The prosecution struck the last potential minority juror
> based upon the alleged observation that the juror failed to make eye contact
> with the prosecution and that the potential juror had a family member who
> had been convicted in unrelated matters.

**Ground Two**: Petitioner was denied due process when the prosecution eradicated
evidence that was favorable to Petitioner.

> Supporting Facts: The prosecution destroyed the Petitioner's vehicle which
> could have changed the outcome of the trial.  The evidence would have
> shown that there were bullet grazes on the car of the appellant.  Had the
> Ford Taurus been preserved, it would reveal that the Appellant was actually
> the victim injured by the aggressive actions of the Prego brothers.

**Ground Three**: Petitioner was denied due process when the evidence was insufficient to

6

convict Petitioner beyond a reasonable doubt.

> Supporting Facts: The evidence was contradictory and inconsistent and did not fulfill the requirements of the 14th Amendment in proving the elements of murder beyond a reasonable doubt.

**Ground Four:** Petitioner was denied effective assistance of appellate counsel.

> Supporting Facts: Appellate counsel failed to raise the issue on appeal that the prosecuting attorney made incriminating remarks regarding Petitioner's prior convictions, thus compelling Petitioner to testify on the stand.

**Ground Five:** Petitioner's sentence is contrary to law under the Sixth and Fourteenth Amendments.

> Supporting Facts: Petitioner's sentence violates the governing principles set forth in *Blakely*, and the Ohio Supreme Court in *State v. Foster*. His sentence exceeds the maximum sentence.

(Doc. #1 at pp. 5-15).

## V.    **Undisputed Matters**

This Court previously issued a Report and Recommendation finding Petitioner's habeas petition to be barred by the applicable statute of limitations. (Doc. # 11). Thereafter, Petitioner filed his objections. (Doc. #13). Upon review of those objections, the undersigned withdrew the previous Report and Recommendation. (Doc. # 14). Respondent then filed his response and stated: "Respondent agrees with Williams that he has demonstrated cause for not timely appealing his direct appeal from the state appellate court to the Ohio Supreme Court. Therefore, Williams' grounds for relief have been properly presented and are not procedurally defaulted." (Doc. #15 at 2). The Court thus turns to a merit review of Petitioner's claims.

7

**VI.**     **Discussion**

      **A.**     **The Antiterrorism and Effective Death Penalty Act (AEDPA)**

"The first line of analysis under AEDPA focuses on the consistency of the state-court decision with existing federal law."  *Forensic v. Birkett*, 501 F.3d 469, 472 (6ᵗʰ Cir. 2007).  A state court decision is not consistent with federal law when the state court decision is "objectively unreasonable."  *Id.* (*citing Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495 (2000).

      **B.**     **Analysis**

**1.**
**Williams' First Claim**

Williams, an African-American, contends he was denied due process and equal protection when the trial court overruled his *Batson* challenge. The state trial judge overruled Williams' *Batson* challenge when he objected to the last African-American, Mr. Ward, being dismissed from the jury.  (Doc. #5-1, Exh. 19).

The trial judge overruled the *Batson* objection for two reasons.  First, Mr. Ward had a cousin who had been convicted in a criminal court.  The prosecutor asked the jury if they had a family member who had been convicted in a criminal case and Mr. Ward did not respond to the question until directly asked.  *See* Tr. Vol. I, pp. 27-29.  Another juror, a white woman, was excused by the state for this very reason.  (Tr. Vol. I, pp. 88, 90-91.) Additionally, Mr. Ward would not look directly at the prosecution while being questioned.  (Id. at p. 91.)

8

The Ohio Court of Appeals rejected Williams' *Batson* claim, explaining:

[*P9]  Williams's First Assignment of Error is as follows:

[*P10]  "THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S BATSON CHALLENGE BASED UPON THE PROSECUTOR'S USE OF PEREMPTORY JURY STRIKES TO ELIMINATE MINORITY JURORS FROM THE JURY PANEL."

[*P11]  Although Williams addresses this assignment of error to the State's exercise of peremptory challenges to both prospective jurors Angela Miller and William Ward, the record does not reflect that prospective juror Miller is a member of a protected minority. When defense counsel made his Batson challenge during voir dire, it was on the ground that the State was removing the "only African-American on the jury." Miller was on the jury at the time, so presumably she is not African-American. There is nothing in the record to indicate what Miller's race is.

[*P12]  With respect to Ward, when Williams objected to the State's use of a peremptory challenge to remove him from the jury, the trial court inquired as to the [**6]  prosecutor's motives for exercising the peremptory challenge. The prosecutor said that he did not want relatives of persons convicted of crimes sitting on a jury in a criminal case because "they were just too sympathetic." He also noted that Ward had not answered the question concerning relatives convicted of crimes when it was put to the venire as a whole, but only admitted that his cousin had been in and out of jail after being directly asked. Finally, the prosecutor noted that Ward would not look at him during voir dire. The trial court accepted this explanation:

 [*P13]  "I am concerned that -- and I did watch that Mr. Ward did not volunteer when the question was asked about family members or defendants -- prospective jurors being convicted of a crime. As far as whether he looked at Mr. Levinson [the assistant prosecutor representing the State] or not, I didn't look that closely. He did not volunteer. I noted that at the time. It took Mr. Levinson's having to specifically ask him.

 [*P14]  "The court in this particular case finds that there is enough of a race neutral explanation that I am going to overrule your *Batson* challenge, Mr. Lewis. He has stated a reason that [**7]  was pretty objective out there. I saw it happen."

 [*P15]  A challenge to the State's exercise of a peremptory challenge upon the ground of racial discrimination is a three-step process. First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Then, the proponent of the challenge must provide a racially neutral explanation for the

challenge. But the explanation need not rise to the level justifying a challenge for cause. Finally, the trial court must find, based upon all of the circumstances, whether the opponent has proved purposeful racial discrimination. *Batson v. Kentucky (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S.Ct. 1712.*

[*P16]  In this case, the argument centers around the third step. Essentially, the third step requires the trial court to determine whether the racially neutral explanation offered by the State was, in fact, the motive for the peremptory challenge, or whether racial discrimination played a part in the decision.

 [*P17]  With respect to the second and third steps in the *Batson* analysis, we have observed that:

 [*P18]  "As we explained in *[State v.] Nobles [(1995), 106 Ohio App. 3d 246, 665 N.E.2d 1137],* the issue when the prosecutor offers reasons for excluding a potential juror is whether the reasons are facially valid. The reasons need not be persuasive or even plausible. 'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' *Nobles, supra, at 280, 665 N.E.2d 1137.*

[*P19]  "***

[*P20]  "Since the trial court's determination turns largely upon credibility, *Nobles, supra, at 281, 665 N.E.2d 1137*, its ruling is entitled to substantial deference and will not be disturbed unless clearly erroneous." *State v. Jones, Montgomery App. No. 16123, 1997 Ohio App. LEXIS 4085, at *7, 1997 WL 566159, at *2.*

 [*P21]  The Ohio Supreme Court has held that:

[*P22]  "Finally, step three asks whether, in light of all the circumstances, the state did, in fact, have a discriminatory motive for striking the juror. The burden of persuasion always stays with the opponent of the strike. *Purkett, 514 U.S. 765, at 768, 115 S. Ct. 1769, at 1771, 131 L. Ed. 2d 834, at 839*. The trial court's finding is entitled to deference, since it turns largely 'on evaluation of credibility.' *Batson, 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 89, fn. 21.* " *State v. White, 85 Ohio St.3d 433, 437, 1999 Ohio 281, 709 N.E. 2d 140.*

 [*P23]  Applying these principles to the case before us, we have no difficulty in determining that when the trial court found that the State's proffered reason for exercising its peremptory challenge was, in fact, a racially neutral motive for doing so, its finding was not clearly erroneous.

[*P24]  Williams's First Assignment of Error is overruled.

The state appellate court found Mr. Ward was excused for reasons other than race.

(Doc. #5-2, Exh. 21.)  The appellate court focused on the third step of the *Batson*

10

analysis- whether or not the state offered a race-neutral reason for the juror strike.  (Id.)
The state appellate court found that the state did provide a race neutral reason for the
strike and that the trial court's finding was not clearly erroneous.  (Id.)

A prosecutor may not strike a juror on the basis of race. *Batson v. Kentucky*, 476
U.S. 79 (1986).  When raising a *Batson* challenge, a defendant must first "show that he is
a member of a cognizable racial group and that the prosecutor has exercised peremptory
challenges to remove from the venire a member of the defendant's race.  *Id.* at 96.
Second, the defendant can rely on the facts of his race and any other relevant
circumstances to raise a necessary inference of purposeful discrimination.  *Id.*  Once the
defendant raises a *Batson* challenge, the burden shifts to the prosecution to "articulate a
race neutral explanation related to the particular case to be tried."  *Id.* at 98.  The trial
judge will then determine if there was purposeful discrimination.  *Id.*  On review of a
*Batson* challenge, "[w]hether a prosecutor intended to discriminate on the basis of race in
challenging potential jurors is, as *Batson* recognized, a question of historical fact."
*Hernandez v. New York*, 500 U.S. 352, 367, 111 S.Ct. 1859, 1870 (1991).

The state court's decision was not unreasonable because the prosecutor could
provide not only one, but two, race-neutral reasons for striking Mr. Ward (because he
refused to answer a question posed directly to him and because he would not make eye
contact with the prosecutor).  The AEDPA requires federal courts to show deference to
state court decisions of fact finding unless the state court clearly misapplied Federal law
or the decision was unreasonable "in light of the evidence presented in the State court

proceeding."  28 U.S.C. §2254(d).  When examining a *Batson* claim, a federal court must show "great deference" to the trial court "in judging the credibility and demeanor of the juror and the prosecutor."  *Braxton v. Gansheimer*, 561 F.3d 453, 462 (6th Cir. 2009). The Ohio Court of Appeals decision finding that Mr. Ward was properly dismissed was not an unreasonable application of *Batson*. Accordingly, this claim should be dismissed.

## 2.
## Williams' Second Claim[3]

Williams claims he was denied due process of law when the prosecution destroyed exculpatory evidence.  He claimed the prosecution destroyed the Taurus he was driving on the night of the shooting.  (Doc. #3).  He claimed the car would provide evidence that would be useful in his case.  (Doc. #3).  He claimed the car would show the Prego brothers shot at his car and that Howell was acting in self-defense. The state ran tests on the car, and provided the evidence to Williams.  (Doc. # 5, Exh. 20). Then, the car was returned to its rightful owner.  (Doc. #5, Exh. 4).  The state also provided Williams with the location of the vehicle, but he never examined it.  (Doc. #5, Exh. 20).  Williams made this assertion in state trial court and in state appellate court but did not address this assertion in his last filing with this Court; this Court will still address this assertion.

To succeed on his destruction of evidence claim, Williams must "show bad faith on the part of the police, failure to preserve potentially useful evidence."  *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337 (1988).  "To meet [the] standard of

---

[3] Petitioner states that he agrees that his destruction of exculpatory evidence claim is meritless and waives the claim. (Doc. # 18 at 1). In the interest of a complete record, this Court will address the claim.

constitutional materiality…evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 2534 (1984).  The defendant bears the burden to prove the evidence destroyed was exculpatory.  *Id.* at 488-89.

Williams cannot show the prosecution destroyed evidence because the evidence was not destroyed and the location of the car in question was provided.  The prosecution was able to provide comparable evidence by producing the results of the tests run on the Taurus and the pictures taken.  Furthermore, Williams cannot show the Taurus itself was exculpatory evidence.  The state appellate court notes the Taurus would not have been useful to Williams' claims of new evidence that would show the Prego brothers were the aggressors because the car could not reveal conversations, motives, or who initiated gunfire.  (Doc. #5, Exh. 20).   While Williams contends there is new evidence, he never articulates what that evidence is.  Id.  If Williams does not identify the evidence, then this Court cannot judge whether it is exculpatory.  The state appellate court's decision that the prosecution did not destroy evidence was not objectively unreasonable because the prosecutor did not destroy evidence and the state court's actions were not contrary to federal law.

### 3.
### Williams' Third Claim

Williams claims there was insufficient evidence to prove him guilty beyond a

reasonable doubt of the murder of Anthony Prego and the attempted murder of Brian

Prego.[4] Williams' state trial was a jury trial, and the jury found him guilty. The state

appellate courts found there was sufficient evidence to convict Williams, specifically

because the testimony presented at trial and the forensic evidence evinced Williams'

guilt. (Doc. #5, Exh. 21.) The Ohio Court of Appeals stated:

> "An appellate court's function when reviewing the sufficiency of the evidence to
> support a criminal conviction is to examine the evidence admitted at trial to
> determine whether such evidence, if believed, would convince the average mind of
> the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether,
> after viewing the evidence in a light most favorable to the prosecution, any rational
> trier of fact could have found the essential elements of the crime proven beyond a
> reasonable doubt." *State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492,
> paragraph two of the syllabus*; see, also, *State v. Thompkins, 78 Ohio St.3d 380,
> 1997 Ohio 52, 678 N.E.2d 541.*

> [*P38] In arguing the sufficiency of the evidence, Williams relies upon the
> testimony of himself and Paula Harris, who allegedly was a back-seat passenger in
> the Taurus at the time of the shooting. According to both of them, Howell was the
> only person shooting from the Taurus, not Williams, and Williams only pursued
> the Prego brothers in response to Howell's threat to kill him if he did not give
> chase. Arrayed against this testimony is both forensic evidence that two different
> guns were fired from the Taurus, and the testimony of Brian Prego and Angel
> Wright, who lived in one of two apartments that were in the line of fire, that they
> heard two distinct kinds of gunfire, firing almost simultaneously.

> [*P39] Also arrayed against the testimony of Williams and Harris is Williams's
> admission, later recanted, to the investigating officer that he fired shots, and
> Harris's statement to the police, later recanted, that she was not with Williams and
> Howell that night. [1]
> 1 Harris's prior statement would only be admissible to impeach her trial testimony;
> but if her prior statement is credited, it effectively negates the entire burden of her
> testimony exculpating Williams.

> [*P40] We conclude that when all of the evidence is viewed in a light most favorable
> to the State, there is evidence in the record that, if believed, would persuade a

---

[4] Williams was convicted of other crimes involving the drive-by shooting of the Prego brothers, but these
are the most egregious of the charges.

reasonable mind of Williams's guilt upon all of the charges and specifications, beyond reasonable doubt. Accordingly, Williams's Third Assignment of Error is overruled. *Id*.

Williams claims there are several ways his conviction was not supported by sufficient evidence. (Doc. #18). First, he claims the testimony at trial show there was reasonable doubt. *Id*. Howell testified Williams did not fire any shots and that he coerced Williams into following the Prego brothers. *Id*. Brian Prego did not identify Williams as the shooter. *Id*. Paula Harris testified Williams was not the aggressor in the shooting. *Id*. Second, Williams notes his fingerprints were not found anywhere on the 40 caliber weapon, the 9 millimeter magazine, nor the shell casings found under the driver's seat of the Taurus. *Id*. Third, Williams claims the supplemental reports filed by Detectives Burke and Elzholz are "suspect" because they did not record their interviews with Williams or Harris on tape. *Id*. Fourth, Williams claims he could not have fired any shots because of the fifteen shell casings found, only one was found on his side of the vehicle. *Id*.

When courts examine a sufficiency of the evidence claim, the primary issue is if any reasonable trier of fact could have found the essential elements of crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). Mere existence of new evidence relevant to the guilt or innocence of a prisoner is not enough for relief on federal habeas corpus. *Herrera v. Collins*, 506 U.S. 390, 398, 113 S.Ct. 853, 859 (1993). When examining an insufficiency of the evidence claim, the issue is not "whether the trier of fact made the *correct* guilt or innocence determination, but whether it made a *rational* decision to convict or acquit." *Id.* at 402.

Evidence presented in a sufficiency of evidence claim must be viewed in a light most favorable to the prosecution. *Jackson*, 443 U.S. at 319. Appellate courts should not consider sufficiency of evidence claims the same way trial courts consider evidence because "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." *Herrera*, 506 U.S. at 399. When considering a sufficiency of the evidence claim, courts will not weigh the probative value of the evidence unless the defendant can show there was "fundamental miscarriage of justice" and there is new evidence of actual innocence. *Id.* at 404.

The AEDPA requires the federal court show deference to state court decisions of fact finding unless the state court clearly misapplied Federal law or the decision was unreasonable. 28 U.S.C. §2254(d). "If there are conflicts in evidence or conflicting inferences arising from the facts, the court must presume that the trier of fact resolved those conflicts in favor of the state, and defer to that decision." *OB'Saint v. Warden*, 675 F.Supp.2d 827, 829 (S.D. Ohio 2009) (citing *Jackson*, 443 U.S. at 326).

Williams has *not* shown the evidence presented against him at trial was insufficient. First, the testimony presented at trial implicated Williams. Angela Wright and Brian Prego both testified to hearing multiple firearms the night of the shooting. (Doc. #5, Exh. 20). Additionally, both Howell and Harris were impeached on the witness stand. *Id.* Second, though Williams' fingerprints were not found at the scene, the police officers on the scene saw Williams dispose of a 9 millimeter magazine. *Id.* Williams also made statements to these officers implicating himself in the crime. *Id.* Third, Williams presents no evidence for

16

a reason to question the supplemental reports submitted by Burke and Elzholz.  He states the detectives "could" have altered their reports but offers no evidence that Burke and Elzholz *did* alter the reports.  Fourth, Williams presents no other evidence as to the location of the shell casings in the car - only "logic."  He offers no expert testimony or forensic tests that might show the casings should have been found elsewhere if he were guilty.  He also ignores the fact that his vehicle engaged in a high speed chase and accident after the shooting and a reasonable person could assume the casings shifted in that time.

The state appellate court was not unreasonable in finding sufficient evidence to convict Williams.  Evaluating the evidence in a light favorable to the prosecution and showing deference to the state court's reasonable decision, this Court dismisses Williams' sufficiency of evidence claim.

4.
**Williams' Fourth Claim**

Williams contends he was denied ineffective assistance of appellate counsel due to counsel's failure to allege the ineffective assistance of trial counsel. Williams contends that his trial counsel should have requested the trial court to determine at the sentencing hearing the existence of the specification involving prior offenses. (Doc. # 3 at 17-18). "This procedure removes references to this prior conviction before the jury, should the defendant elect not to testify." *Id*.  According to Williams, he suffered extreme prejudice due to his counsel's failure to follow this procedure and appellate counsel should have raised it on direct appeal.

17

To establish his ineffective assistance of appellate counsel claim, Petitioner must demonstrate: (1) his attorney on direct appeal made such serious errors he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorney's deficient performance prejudiced the defense by undermining the reliability of the appeal result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984).

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986). "Counsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005). Appellate counsel's failure to raise an issue that lacks merit cannot constitute ineffective assistance of appellate counsel. *Willis v. Smith*, 351 F. 3d 741, 744-45 (6th Cir. 2003).

Ohio courts have consistently held that proof of a prior felony conviction is admissible to prove the "under a disability" element of possession of a weapon while under a disability. *State v. Twyford*, 94 Ohio St.3d 340 (2002). Indeed, the Second District Court of Appeals has held that a trial court is not required to accept a stipulation of a prior conviction when one is offered. *State v. Smith*, Montgomery App. No. 18654, 2001 WL 896778 (Ohio App. 2001);

18

1396; *State v. Reid*, Montgomery App. No. 23409; 2010 Ohio 1686; 2010 Ohio App. LEXIS 1415 (Ohio App. 2010).

Because it is clear that even if appellate counsel had raised this issue it would have been rejected, Petitioner's ineffective assistance of appellate counsel claim lacks merit.

### 5.
### Williams' Fifth Claim

Williams claims his sentence violated *Blakely v. Washington* and his sentence is contrary to law under the Fourteenth and Sixth Amendments.  (Doc. #3 at 21).  He was sentenced to fifteen years to life with an additional consecutive thirty-two years, added on due to gun specifications.  (Doc. #5).  Williams asserts the state courts engaged in judicial fact finding.  Additionally, Williams argues his rights were violated because he is eligible for new sentencing under *State v. Foster*, 109 Ohio St.3d 1, 31 (2006).

*Blakely v. Washington* only applies when judges have sentenced above the mandatory statutory guidelines based on evidence that has not been presented to the jury.  542 U.S. 296, 303-04 (2004).  *Foster* only applies to cases that were on direct review at the time of the decision, meaning only those who had not yet exhausted their state claims.  109 Ohio St.3d 1, 31 (2006).

Williams is not eligible to new sentencing under *Foster*.  Williams' direct review state claims became finalized on August 8, 2005, when the Ohio Supreme Court refused to hear his appeal.  (Doc. #7).  *Foster* was published on February 27, 2006; therefore, Williams is not eligible for new sentencing under *Foster*. Moreover, the United States Supreme Court

19

has held that a state sentencing judge's decision to impose two consecutive sentences did not violate Petitioner's constitutional rights.  *See Oregon v. Ice*, 555 U.S. 160, __, 129 S.Ct. 711, 714-15 (2009) (holding that *Blakely* and *Apprendi* do not apply to consecutive sentences). Therefore, when imposing a consecutive sentence, neither judicial fact-finding nor the lack of such findings, violate clearly established federal law. As such, any argument by Williams that *Blakely* precluded the imposition of consecutive sentences where judicial findings of fact were made is unavailing. For these reasons, the state appellate court was not objectively unreasonable in finding Williams sentencing did not violate *Blakely* or Williams' constitutional rights.

Because reasonable jurists would not disagree with the above conclusion, Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Michael A. Williams' Petition for Writ of Habeas Corpus (Doc. #1) be DENIED and DISMISSED;

2.  Petitioner should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability; and,

3.  The case be terminated on the docket of this Court.

February 2, 2011

                              s/ Sharon L. Ovington
                              Sharon L. Ovington
                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).